In the case at hand, plaintiff has not and cannot allege sufficient facts to sustain his "but for" burden. Moreover, plaintiff has not pled or demonstrated any factual allegations regarding retaliatory motive and action. Specifically, plaintiff alleges that unidentified defendants and/or correction officers retaliated against him because he complained about officers being part of racial organizations. However, the retaliatory conduct is that again unnamed and unidentified defendants and/or correction officers placed him in the SMU, 10-block, while other allegedly violent inmates were also placed in 10-Block. First, plaintiff cannot claim retaliation and not identify the individuals that retaliated against him. Moreover, plaintiff does not identify the actions of any specific individuals. Thus, it is impossible to discern whether plaintiff even complained about any officers. Moreover, plaintiff cannot sustain his "but for" burden, as defendants followed their regulation with regard to the SMU in each instance that plaintiff was placed in this unit.[1] *See* discussion, *supra*, at §VD. Thus, there was a legal basis for such placement at each step. Accordingly, plaintiff's retaliation claim must be dismissed.

## VIII. PLAINTIFF CANNOT SUSTAIN HIS EIGHTH AMENDMENT CLAIM THAT DEFENDANTS HAVE BEEN DELIBERATELY INDIFFERENT TO HIS SERIOUS MEDICAL NEEDS.

First, plaintiff's Eighth amendment claims fail against defendants, as they have only been properly sued in their official capacity. *See* discussion, *supra*, §III. However, even if the Court addresses plaintiff's claim that defendants have been deliberately indifferent to his serious medical needs under an Eighth Amendment cruel and unusual punishment claim, this claim fails as a matter of law. First, in the instant case, there are no allegations of fact connecting any of the defendants to the plaintiff's medical care.

---

[1] Moreover, it is important to note that in all cases in which plaintiff was placed in the SMU because of a pending disciplinary report, he pled guilty to said disciplinary report. *See* Exhibits D1, D2 and D3.

Defendants were not involved in any way in the medical decisions or in the care itself, nor does plaintiff claim otherwise. Specifically, plaintiff's sole claim of a violation of the Eighth Amendment based upon a deliberate indifference to serious medical needs is that plaintiff was housed in the SMU, 10-Block, which he claims is an area containing mold and bacteria. First, plaintiff does not claim that the conditions of confinement based upon the items, ie. feces, food and/or urine on the walls and tiers, are a violation of his Eighth Amendment rights. Rather, plaintiff claims that due to inmates throwing feces, food and urine over the course of numerous years creates an area that is moldy and/or contains bacteria. Thus, his claim is that due to his medical condition, *to wit*, the fact that he has lupis, he cannot be housed in the SMU.[2]

Plaintiff appears to simply allege that defendants are ignoring a serious medical need by housing him in the SMU. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitely v. Albers, 475 U.S. 312, 319 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (internal quotation marks omitted). In order to sustain an Eighth Amendment claim involving prison medical treatment, therefore, an inmate must prove that the prison officials' actions amounted to "deliberate indifference to a serious medical need." DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir 1991) (*citing* Estelle v. Gamble, 429 U.S. 97, 104-106 (1976)); *see also* Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981). "Deliberate indifference is conduct that offends evolving

---

[2] Any further claim regarding the sanitation in 10-block has not been properly grieved and/or pled. Therefore, it cannot stand. Moreover, plaintiff fails to allege specific facts regarding the conditions in the SMU while he was housed there. Rather, he simply makes a blanket statement that "due to years on end of inmates throwing feces, food and/or urine on the walls, tiers. Correctional officers often leave the said feces, food, and/or urine on the walls, tiers for long periods of time then don't even adequately clean it up." These facts are insufficient to establish an Eighth Amendment claim. Plaintiff does not allege that at the specific time he was housed in the SMU, there was feces on the wall for a period of time.

standards of decency in a civilized society." DesRosiers, 949 F.2d at 18 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In other words, deliberate indifference to serious medical needs amounts to the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104 (*quoting* Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

There is a two-prong test to determine whether a deprivation of medical care rises to the level of deliberate indifference:

> The deliberate indifference standard embodies both an objective and a subjective standard. First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' Second, the charged official must act with a sufficiently culpable state of mind . . . a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'

Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir 1994), *cert. denied*, 513 U.S. 1154 (1995) (internal citations omitted) (*quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994)); *see also* DesRosiers, 949 F.2d at 18. "While this mental state can aptly be described as 'reckless,' it is recklessness not in the tort-law sense but in the appreciably stricter criminal law sense, requiring actual knowledge of impending harm, easily preventable." DesRosiers, 949 F.2d at 19. *See* Torres v. Comm'r of Correction, 427 Mass. 611 (1998) (plaintiff "must point to *both* (1) a condition or situation which poses a substantial risk of serious harm; and (2) facts establishing that a prison official has knowledge of the situation and ignores it.") Torres, 427 Mass. at 616 (emphasis in original) (internal quotations omitted).

An inmate can prove deliberate indifference by establishing that he has been denied medical treatments as a punishment or that prison medical personnel have made "wanton decisions to deny or delay care." Watson v. Caton, 984 F.2d 537, 540 (1st Cir.

1993). It is well established, however, that mere negligence does not constitute deliberate indifference. DesRosiers, 949 F.2d at 19. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 198 n.5 (1989).

Examination of plaintiff's claim shows he has failed to state a claim for deliberate indifference against defendants. Plaintiff fails to make any specific allegations of deliberate indifference toward any of the named defendants. Moreover, the only defendant that plaintiff identifies as taking any action regarding any of the facts in the Complaint is defendant Deputy Luongo. The only facts against Deputy Luongo are that he "refuses to let plaintiff out of Ten Block." Complaint, at 2. Thus, the only issue is whether defendant Luongo's actions in "refusing to let plaintiff out of Ten Block," amounts to deliberate indifference to plaintiff's serious medical needs. Plaintiff must then show that there is a condition or situation regarding his medical care that poses a significant harm. Plaintiff sole allegation is that he has been diagnosed with Lupus and that Lupus effects the immune system. There are absolutely no factual allegations demonstrating that plaintiff did not receive proper medical care for his alleged condition or that any specific harm came from his housing in the SMU.

In addition, plaintiff must be able to demonstrate that defendants knew of plaintiff's condition and some harm, of which he fails to allege, and intentionally ignored this harm. First, plaintiff fails to even allege facts to support such. Moreover, an

examination of plaintiff's grievance regarding this issue and his medical records demonstrate that plaintiff (1) did not suffer any harm and (2) defendants were not deliberately indifferent to his medical condition.

First, in response to plaintiff's grievance regarding his medical condition as it relates to his housing in the SMU, the grievance officer sought medical advice regarding the issue from medical staff. Specifically, "medical staff was contacted and informed [the grievance coordinator] that there is no medical reasons precluding an inmate with Lupis (sic.) from being placed in 10-Block." *See* Grievance #1702, attached hereto at Exhibit A2. More importantly, a review of plaintiff's medical records during the relevant time period (from November 4, 2003, to January 8, 2004) demonstrates that plaintiff obtain all requested medical care and all necessary medical care. In fact, plaintiff was able to see medical personnel on numerous occasions. Furthermore, at no time did plaintiff speak to medical personnel regarding his medical condition (lupus) being exacerbated by his housing in 10-Block. Rather, plaintiff simply complained about being housed in 10-Block, as he was not happy with this housing. *See* Sick Call Requests, attached hereto at F1 and Medical Records attached hereto at Exhibit F2.[3] As such, it is clear that his claims in this case are simply an attempt to dictate his housing.

Accordingly, the plaintiff's complaint fails to allege any facts indicating that defendants "knew of and disregarded an excessive risk to inmate health or safety." Hathaway, 37 F.3d at 66. To the contrary, defendants placed plaintiff in 10-Block based upon his allegations of enemies within the institution and promptly and quickly

---

[3] Because of the confidentiality of medical records, defendants only provide those medical records for the time period brought into question by plaintiff in his complaint. If the court requires further medical records, plaintiff's entire medical file can be provided, and will demonstrate that he has received appropriate medical care throughout.

investigated these allegations. Plaintiff spent a mere two months in 10-Block awaiting a resolution of the potential enemy conflict and possible re-classification. What really emerges from the attached medical records is the portrait of an inmate who is seeking to dictate his housing, rather than a medical need for specific housing or a medical problem with housing that he was in at the relevant time period. Plaintiff's medical records similarly demonstrate that the Department was reviewing possible alternative housing for plaintiff that he similarly was not happy with.[4] *See* Sick Call Requests, attached hereto at Exhibit F1 and Medical Records, attached hereto at Exhibit F2. As previously discussed, plaintiff does not have a right to housing of his choice. Plaintiff's claim of deliberate indifference appears to simply be an attempt to manipulate his housing.

Finally, as an employee of the Department of Correction, defendants are entitled to rely on professional judgment of the Department's contractual medical providers. Layne, 567 F. 2d at 472; McCracken v. Jones, 562 F.2d 24 (10th Cir. 1977); Rosen v. Chang, 811 F. Supp. 754, 761 (D.R.I. 1993). (Prison administrator was entitled to qualified immunity when he relied upon licensed nurses and doctors "to exercise informed medical judgment and to provide adequate health care" to prisoner). At no time did the contractual medical providers state that plaintiff's housing in 10-Block was in any way a risk to his medical needs or health. Accordingly, defendants were entitled to rely on the medical judgment of the contractual provider concerning the appropriate treatment of the plaintiff's illness(es). As a matter of law, therefore, the Eighth Amendment claim against defendants must fail.

---

[4] For example, on December 31, 2003, the clinician notes that "[w]hen asked about his lupus pt. Stated that it is stable right now and he is not having any symptoms," but states that he is "frustrated with security and would like to know when he will be returning to general population. Pt. Stated that he has been reclassed to MCI-Norfolk however indicated that he does not want to leave MCI-CJ due to having to share a cell."

**CONCLUSION**

For the foregoing reasons, defendants request that this Motion for Summary Judgment be granted.

Respectfully Submitted,

NANCY A. WHITE
Special Assistant Attorney General

Dated: November 11, 2005

/s/ Julie E. Daniele
Julie E. Daniele
BBO#600093
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300, ext. 115