UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:  04-CV-10103-GAO

| | |
|---|---|
| LANCE HULLUM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL MALONEY, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

In compliance with Local Rule 56.1, defendants submit this concise statement of material facts in support of their motion for summary judgment, to be considered along with their memorandum of law in support of their motion, filed herewith.

1.  On or about January 8, 2004, plaintiff, a prison inmate lawfully incarcerated at MCI-Cedar Junction, filed this Complaint *pro se*.

2.  On or about May 17, 2004, Attorney Dana Johnson filed a notice of appearance; however, she retained plaintiff's *pro se* Complaint.

3.  Plaintiff is an inmate lawfully incarcerated within the DOC and is currently and at all times relevant to his Complaint was properly housed at the Massachusetts Correctional Institution, at Cedar Junction, ("MCI-Cedar Junction"), a maximum security facility located in Walpole, Massachusetts. *See* Complaint, at ¶1 and Exhibit B1 (Classification/East Wing Hearing Report).

4.  Plaintiff's complaint seeks monetary relief for what appears to be claims of the following (1) improper housing in the Special Management Unit("SMU"), 10-

Block, at MCI-Cedar Junction; (2) deliberate indifference to his medical needs; and (3) retaliation.

5.   Plaintiff has named the following defendants: Michael Maloney, then Commissioner of the Department of Correction; Kathleen Dennehy, present Commissioner of the Department; Peter Allen, then Superintendent, MCI-Cedar Junction; John Luongo, Jr., Deputy Superintendent, MCI-Cedar Junction; Steven Silva, then Deputy Superintendent, MCI-Cedar Junction; and Edwin Doolin, then Captain, MCI-Cedar Junction.

6.   On or about November 4, 2003, plaintiff was moved from Block 4, an East Wing Restrictive Unit at MCI-Cedar Junction, to the Special Management Unit, Block-10. *See* Exhibit C (Bed Management Sheet). On this same date, the administration at MCI-Cedar Junction received information from the Norfolk County District Attorney's Office that inmate Hullum had sent them a letter claiming to have enemy issues with Aryan Supremacist and Latin King gang members within MCI-Cedar Junction. *See* Exhibit B2 (Classification Report). Based upon this information, for protective custody purposes, plaintiff was placed in 10-Block (the SMU). 103 CMR 423.08(1).

7.   Immediately prior to his move to 10-Block, plaintiff was charged with a disciplinary report for sending a letter to the Clerk of Court of the Massachusetts Court of Appeals which stated: "I am not one of those inmates you can play with, with your white supremacist, power tripping, sexually abused by a priest self. It's a good thing I can't mail myself to the court because I would cut you from your ass to your head! You [expletive] cracker." *See* Exhibit D1 (Disciplinary Report). Plaintiff pled guilty to this disciplinary report. *See* id.

8.     Defendants investigated the potential enemy situation at MCI-Cedar Junction, and on January 8, 2004, deemed it safe to place plaintiff back in the East Wing Restrictive Units (Unit 4) of general population.  *See* Exhibit C (Bed Management Sheet).

9.     On January 24, 2004, however, plaintiff was in a fight with two (2) other inmates.  *See* Exhibit D2 (Disciplinary Report).  Plaintiff was immediately returned to 10-Block on awaiting action status.  *See* Exhibit C (Bed Management Sheet).  Plaintiff remained in 10-Block until February 2, 2005, when he was returned to Unit 4.  *See* id.

10.    On February 5, 2004, plaintiff received an East Wing Hearing and was found to be a substantial threat to the safety and security of the institution; therefore, recommended to remain in Unit 4.  *See* Exhibit E (East Wing Hearing).

11.    Plaintiff remained in Unit 4 until June 2, 2004, when he threatened another inmate and disrupted a staff attempt to quell another disturbance.  *See* Exhibit D3.  At this point, plaintiff was again placed on awaiting action status pursuant to 103 CMR 423.08 in 10-Block.  *See* Exhibit C (Bed Management Sheet).  Plaintiff was returned to the East Wing Restrictive Units (Unit 7) only two (2) days later.  Id.

12.    Plaintiff was able to request medical care during his entire retention in 10-Block.  *See* Exhibit F1 (Sick Call Requests).

13.    Plaintiff received more than adequate medical care while housed in 10-Block.  *See* Exhibit F2 (Medical Records).

14.    At no time did medical staff inform (or determine, for that matter) that plaintiff should not be housed in 10-Block because he has Lupus.  *See* Exhibit F2 (Medical Records).

15. In fact, the grievance coordinator contacted medical staff and was informed that there was no reason an inmate with Lupus could not be housed in 10-Block. *See* A2 (Grievance).

16. Plaintiff's medical records to not identify any contraindications to his housing in 10-Block. *See* Exhibit F2 (Medical Records). In fact, they demonstrate that plaintiff was simply unhappy with his housing placement. Id.

17. During the time period from October, 28, 2003, through January 8, 2004, plaintiff filed a total of six (6) grievances, #'s 1619, 1702, 1704, 1740, 1937, and 1954. *See* Exhibit A7 (Affidavit of Grievances Coordinator). These grievances are all attached as Exhibits A1-A6 to demonstrate what claims plaintiff properly exhausted administrative remedies with regard to and what plaintiff is precluded from asserting in this case.